UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

HANCY JOSEPH,

                        Plaintiff,

          v.

OWENS & MINOR DISTRIBUTION, INC.,

                       Defendant.

**MEMORANDUM & ORDER**
11-CV-5269 (MKB)

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Hancy Joseph brought this action against Defendant Owens & Minor

Distribution, Inc. ("Owens & Minor"), alleging race and national origin discrimination and

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") and

the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL").  Defendant

moved for summary judgment as to all claims.  The Court heard oral argument on February 13,

2014.  For the reasons set forth below, the Courts grants Defendant's motion for summary

judgment .

    **I.**   **Background**

        **a.**  **Plaintiff's Employment**

      Plaintiff was employed as a Senior Project Analyst with Defendant, a distributor of

medical and surgical supplies.  (56.1 ¶¶ 1, 5.)[1]  Plaintiff is African-American and from Haiti.

---

[1] Plaintiff's opposition Rule 56.1 statement disputes only five of the paragraphs of
Defendant's Rule 56.1 statement.  Therefore, references to the 60 remaining paragraphs of
Defendant's Rule 56.1 statement are considered undisputed, and are referred to as the "56.1."
Where the parties disagree the Court will identify the Rule 56.1 statement by party.

(Compl. ¶ 6.)  Plaintiff began working at Owens & Minor in February 2008 as a Project Analyst. (Def. 56.1 ¶ 5; Compl. ¶ 10.)  According to Plaintiff, he was hired by Regional Business Director Tom Leonhardt, and throughout his employment at Owens & Minor, he was supervised and evaluated by Leonhardt.  (Affidavit of Hancy Joseph ("Joseph Aff.") ¶ 6.)  Plaintiff claims that he was not trained for his job as a project analyst, but Leonhardt showed him what he needed to do and what was expected of him.  (Def. Ex. B, Deposition of Plaintiff Hancy Joseph ("Pl. Dep.") 158:3–8.)  Plaintiff was promoted to Senior Analyst in November 2009.  (56.1 ¶ 8; Joseph Aff. ¶ 5.)  He was first supervised by William Ayres, a regional director, and in February 2010, David White became his manager.  (Pl. Dep. 76–77.)  According to Plaintiff, Leonhardt remained his "unofficial manager."  (Pl. Dep. 75:15–17; Joseph Aff. ¶¶ 7–8.)

Plaintiff's job responsibilities included working on Clinical Supply Solution ("CSS"), an inventory management system which was provided by Owens & Minor to its clients — various hospitals that purchased supplies from the parent company of Owens & Minor.  (56.1 ¶ 12.) After Plaintiff's promotion, Ayres promised that he would provide Plaintiff with training for the position, and White asked Plaintiff to prepare to travel to Washington for one week in April or May 2010 for a training on CSS, but that trip never took place.  (Pl. Dep. 158:16–25.)  Plaintiff asserts that Defendant trained similarly situated Senior Analysts Joel A. Kusterer and Courtney Brouilette, both of whom are white, (Joseph Aff. ¶ 10; Compl. ¶ 10), and paid him a lower salary than Brouilette and Kusterer, as well as other lower ranked Project Analysts.  (Joseph Aff. ¶ 11– 12; Compl. ¶ 24.)  According to Defendant, "Plaintiff was trained in his job." (Def. 56.1 ¶ 10).

Plaintiff's evaluations for 2008 and 2009 documented his performance as "meets objectives" or "exceed objectives."  (Pl. Ex. B, evaluations dated Feb. 18, 2009 and Feb. 18, 2010.)  At some point Plaintiff was removed from his placement at two other hospitals, once due

to "an interpersonal dispute," and a second time "at a client's request." (56.1 ¶ 6 (citing Pl. Dep. 62–65); ¶ 7 (citing Declaration of David White ("White Decl.") ¶ 7).) In 2010 White gave Plaintiff positive feedback about his work as the CSS team prepared to launch CSS at New York Methodist hospital, one of Owens & Minor's clients. (White Decl. ¶ 19 and Ex. D, email dated Aug. 19, 2010.)

### b. Alleged Racial Remarks

According to Plaintiff, after his November 2009 promotion to Senior Project Analyst, Mark Davis, the CSS Implementation Manager, "stated that he did not believe I was qualified for the position." (Joseph Aff. ¶ 9.) According to an internal investigation of this incident conducted by Defendant, Plaintiff reported that Davis asked him "Who actually selected you for this assignment?" in a manner that suggested that Plaintiff was not qualified for the position. (Pl. Ex. D, ("Hamilton October Investigation") at ECF 316.) In January 2010, following a major earthquake in Haiti, Davis commented to Plaintiff that Plaintiff "ha[d] accomplished a lot from where you come from," (Pl. Dep. 130:15–132:19), and, at that or another time, stated that culture, background and color play an important role in succeeding, (Pl. Dep. 176:3–14; Joseph Aff. ¶ 9), which struck Plaintiff as racially demeaning.

Over the weekend of August 28–29, 2010 Plaintiff and his colleagues, including Davis, worked through the weekend to prepare for the launch of the CSS program at New York Methodist Hospital. (Pl. Dep. 146–47.) Plaintiff worked without taking a lunch break on Saturday after an unspecified person urged him to continue working and "don't think about food." (Pl. Dep. 146:21–25.) At 5 p.m. that day, Davis invited Plaintiff to eat the leftover pizza that Davis and others working on the team had ordered and eaten in a different room. (Pl. Dep. 147:1–11.) Plaintiff characterized this incident as "mistreatment," but stated that he did not

mention it, or what he felt were racially demeaning interactions with Davis, to anyone else prior to August 30, 2010, as he did not want to "polarize relationship in the institution while [he was] working for them." (Pl. Dep. 133:23–25; 148:8–24.)

### c. August 30, 2010 Incident

In August 2010, Plaintiff was part of the team at Owens & Minor that was preparing to launch CSS in various departments at New York Methodist hospital. (56.1 ¶¶ 11, 13; White Decl. Ex. D.) Mark Davis was also assigned to this team as the on-site manager for the CSS implementation. (56.1 ¶ 14.) On August 30, 2010, Davis was meeting with Aleksey Manashir, in Manashir's office in New York Methodist hospital. (*Id.* ¶ 17.) Manashir was the contact person for New York Methodist hospital working on the launch of the CSS program. (*Id.*) Davis and Manashir were discussing "par levels," which are the parameters for the supply of products that are set by the customer. (Davis Decl. ¶ 5.) Defendant claims that Plaintiff was not scheduled to be a part of the meeting but joined it while it was already in progress. (56.1 ¶ 18.) Plaintiff claims that although this "wasn't a meeting that was scheduled," when he returned from lunch he was invited by Davis to join the meeting. (Pl. Dep. 105:16–23; *see also* Hamilton Decl. Ex. F.)

Davis and Plaintiff started arguing during the meeting with Manashir. According to Davis, Plaintiff "was very rude and began questioning the levels that the customer, Mr. Manashir, had set . . ., was very persistent and aggressive . . . [and] would not stop interrupting and being rude to both me and the customer." (Davis. Decl. ¶ 6.) According to Plaintiff, the customer, Manashir, requested a par level of 50, meaning that an automatic order for the resupply of that product would be placed with Owens & Minor when the in-hospital supply dropped to 50 items. When Davis suggested that a level of 3 was sufficient, Plaintiff chimed in

to state that "if it was me, I would leave 15," at which point Davis got upset and stood up. (Pl. Dep. 108:10–110:23.) According to Manashir, Plaintiff "began interrupting the discussion and arguing with Mr. Davis about elements of the project." (Manashir Decl. ¶ 5.)

Davis asked Plaintiff to leave the meeting, (56.1 ¶ 19), and when Plaintiff refused, Davis placed his hand on the back of Plaintiff's shoulder, upper arm or back, (Def. Mem. 4; Pl. Dep. 113:11–14). Plaintiff characterized this as a "push" intended to push him out of the meeting. (Pl. Dep. 114:12–15.) Plaintiff told Davis that he had "crossed the line" and Plaintiff refused to leave the meeting, stating that he was the senior analyst who would be dealing with the account, and that his word had value. (Pl. Dep. 115:8–11; Joseph Aff. ¶ 16.) Manashir "never saw [Davis] touch Mr. Joseph in any way." (Manashir Decl. ¶ 6.)

Davis and Plaintiff both left the room and separately called White to report the incident. (Davis Decl. ¶ 9; Pl. Dep. 115:13–15.) Davis returned to Manashir's office, where, according to Davis, Manashir inquired "Do I have to work with this guy for three years?" (Davis Decl. ¶ 9.) Davis apologized to Manashir, telling him that "we would . . . do whatever was necessary to ensure the CSS implementation was successful." (*Id.*) Plaintiff followed up his telephone call to White with an email to White describing the incident, (White Decl. Ex. B), followed by a similar email to White's manager Ayres, Davis's manager William Britton, and three other upper-management individuals.[2] (Def. Decl. Ex. C.)

The parties dispute whether Plaintiff complained to White that Davis's actions were racially motivated. White claims that Plaintiff "did not tell me that he believed that the incident

---

[2] The following day, August 31, 2010, Davis gave his manager William Britton a list of incidents that he claims illustrated Plaintiff acting in a "hostile, rude, or unprofessional" manner with team members and customers. (56.1 ¶ 16; Davis Decl. Ex. B.)

resulted from racial or other bias against him on the part of Mr. Davis."[3]  (White Decl. ¶ 5; 56.1

¶¶ 31–32.)  Plaintiff claims that he told White that "I believe this guy is racially motivated" and

that "I'm about to send an email to the VP to address the situation," and White responded by

asking Plaintiff not to send an email because he did not "want that to go around the company,

Owens & Minor."  (Pl. Dep. 120, 138:19–20:11.)  Plaintiff also called Leonhardt to tell him

about the incident.  According to Plaintiff, he told Leonhardt that he believed the incident was

racially motivated.  (*Id*. at 120:16–25, 124:5–18.)  According to Defendant, Plaintiff "was kind

of wondering out loud" if the reason this happened to him "was related to his race."  (Hamilton

October Investigation at ECF 316.)

### d.  Investigation of August 30, 2010 Incident

On September 1, 2010, White investigated the August 30, 2010 incident by speaking with

Plaintiff, Davis and Manashir, and concluded that Davis had not done anything wrong.  (White

Decl. ¶¶ 9–12.)  White counseled Davis to avoid physical contact with Plaintiff, and spoke to

Plaintiff about "the importance of maintain[ing] a professional demeanor at all times in front of

customers."  (*Id*. at ¶¶ 12–13; 56.1 ¶ 27.)  White also started working with human resources to

provide mentoring and counseling to Plaintiff but Plaintiff was terminated before this was

arranged.  (White Decl. ¶¶ 14–15.)

On September 2, 2010, Plaintiff sent an email to William Angus, the Director of Human

Resources, describing the August 30, 2010 incident, characterizing Davis's actions as "deeply

humiliat[ing]," and stating his belief that Davis's actions were a violation of Owens & Minor's

code of honor.  (Def. Ex. C.)  As a result of this email, Helen Hamilton of human resources

initiated an investigation into the August 30th incident.  (56.1 ¶ 38.)  Hamilton recalls that

---

[3]  Although he testified to the contrary, Plaintiff does not dispute these paragraphs in
Defendant's 56.1 Statement.

Plaintiff told her that he believed that Davis needed "sensitivity training," (Hamilton Decl. ¶ 8;

Pl. Dep. 136:23–138:18), "because people are different and it is hard to work with different

cultures," (Hamilton Decl. Ex. D at 3). According to Hamilton, "at no time did [Plaintiff]

suggest that he believed that Mr. Davis had been motivated in his actions by his race or national

origin." (56.1 ¶ 40; Hamilton Decl. ¶ 7.) Plaintiff acknowledged that he did not tell Hamilton

that he felt the incident was racially motivated, because he was "sugar coating" the issue, and he

"want[ed] to put it in a form so it doesn't look ugly . . . I mean whoever is going to say [I am]

playing the race card and I don't want that. I want it to be professional." (Pl. Dep. 138:5–11.)

Plaintiff further conceded that he did not tell Hamilton that he felt "it had something to do with

[his] national origin." [4] (*Id*. at 140:14–18.) Plaintiff also stated that he believed at the time that

White "want[ed] to protect [Davis]," but that "this [was] pure speculation because David White

[didn't] tell me he [was] going to protect Davis." (*Id*. at 137:8–12.)

On September 22, 2010, Hamilton provided a memorandum to Plaintiff documenting the

results of her investigation. (56.1 ¶ 42; Hamilton Decl. ¶ 12 and Ex. G.) Hamilton concluded

that Owens & Minor was unable to substantiate Plaintiff's allegation that Davis violated the code

of conduct and that the dispute in front of the customer "was unnecessary and should have been

avoided. Our own internal disagreements should never be displayed in front of the customer or

an outside vendor." (Hamilton Decl. Ex. G at 1; 56.1 ¶ 43.)

---

[4] In an affidavit submitted with his briefing papers, Plaintiff states that he informed Hamilton that he believed that Davis had discriminated against him on the basis of his race, and that Hamilton responded by saying that she did not believe that the allegation was true. (Joseph Aff. ¶ 21.) There is no reference to this statement in Plaintiff's deposition.

### e. September 22, 2010 Incident

On the afternoon of September 22, 2010, Manashir and Plaintiff were meeting in Manashir's office, and placed a telephone call to Plaintiff's supervisor, White. (Def. 56.1 ¶ 52; White Decl. ¶ 15; Pl. Dep. 187:19–20.) According to Defendant, Plaintiff "proceeded to argue about the type of support Mr. Manashir was receiving at [Owens & Minor], the exact requirements and description of [Plaintiff's] role, and other issues relating to the CSS implementation." (Def. 56.1 ¶ 52.) According to White, both Plaintiff and Manashir were arguing about these issues. (White Decl. ¶ 15.) Plaintiff denies that he argued with Manashir, describing Manishir instead as going "ballistic." (Pl. 56.1 ¶ 52.)

Later that day Manashir left a voicemail message for White informing him that "it is not going to work with me and Hancy," and stating that he believed that he could manage on his own and did "not need this type of support from [an] Owens & Minor Senior Analyst." (56.1 ¶ 54; White Decl. ¶ 16 and Ex. B; Manashir Decl. ¶ 9.) Plaintiff claims that, as he passed Manashir's office when he was leaving the hospital that evening, he overheard Manashir playing a voicemail message from White, asking Manashir to please return his telephone call as soon as possible. (Pl. Dep. 184:13–23.) That evening Plaintiff sent an email to White, Ayres, Robert Kernaghan and Sonny Fitzpatrick (Kernaghan's manager), explaining the incident between Manashir and Plaintiff that led to their disagreement. (White Decl. Ex. C.) In the email Plaintiff explained that Manashir "aggressively addressed" Plaintiff in the morning with accusations that the CSS system was not working, based on an order for surgical supplies not being filled on time. (*Id*.; Pl. Dep. 256–59.) Plaintiff tracked down the order and delivery information and informed Manashir that the delivery had been made the prior day, and provided documentation that Manashir had signed

for the order and delivery.  (White Decl. Ex. C; Pl. Dep. 256–59.)  White characterized this email as "highly critical of Mr. Manashir and very defensive."  (White Decl. ¶ 17.)

### f.  Plaintiff's Termination

As a result of Manashir's dissatisfaction with Plaintiff, White decided to remove Plaintiff from his assignment with New York Methodist Hospital.  (56.1 ¶¶ 55–57; White Decl. ¶ 18.) White met with Plaintiff on September 28, 2010, to inform him of this decision (56.1 ¶ 57; White Decl. ¶ 20.)  Later that day, Plaintiff sent an email to White stating that he "sincerely hope[d] that [White's] decision is not a retaliation for my complaint against Mark Davis."  (White Decl. ¶ 20 and Ex. E.)  Plaintiff believes that White suggested or encouraged Manashir to send an email to human resources at Owens & Minor, and utilized Manashir's September 22, 2010 telephone call to White as a "golden opportunity because of my complaint against Mark Davis."  (Pl. Dep. 187:25–188:6.)  Plaintiff refers to the voicemail message he overheard from White to Manashir, to support his claim that White "orchestrated" a complaint by Manashir to human resources at Owens & Minor to give White an excuse to reassign and/or terminate Plaintiff. (56.1 ¶ 61; Pl.  Dep. 188:3–22, 202:3–24.)

According to Defendant, White considered reassigning Plaintiff to another project, but concluded that there were no suitable assignments for him.  (Def. ¶ 59; White Decl. ¶ 15; Hamilton Decl. ¶ 15.)  On September 30, 2010 White, consulting with his supervisor Ayres and with Hamilton, decided to terminate Plaintiff's employment.  (56.1 ¶ 61.)  White and Hamilton considered Plaintiff's "prior issues with customer–facing relationship[s]," (White Decl. ¶ 22), and the fact that Plaintiff "had engaged in conduct that was detrimental to the organization," (Hamilton Decl. ¶ 15),  in deciding to terminate Plaintiff rather than reassigning him.  On an unspecified date, but likely October 1, 2010, (Joseph Aff. ¶¶ 24–25), White informed Plaintiff

that he was being terminated, and provided him with a severance package that included a general release, which Plaintiff refused to sign. (Pl. Dep. 94–96.) On October 6, 2010, Hamilton called Plaintiff to answer any questions Plaintiff may have had about the severance agreement, and Plaintiff informed Hamilton that he believed that his termination was "related to race." (56.1 ¶ 62; Hamilton Decl. ¶ 17.)

Plaintiff asserts that he was terminated "in retaliation for the incident with Mark Davis and for raising the issue of the incident being racially motivated." (Joseph Aff. ¶ 28.) Plaintiff also challenges Defendant's assertion that his argument with Manashir was the reason for his termination, stating that "[i]t was [Manashir] who became angry and agitated." (*Id.* ¶ 27.) Plaintiff's last day at Owens & Minor was October 15, 2010. (Joseph Aff. ¶ 25.) Hamilton conducted an internal investigation into Plaintiff's complaint of race discrimination, and concluded on October 28, 2010, that they were "unable to substantiate any improper conduct by Mr. Davis or Mr. White." (56.1 ¶ 65.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, --- F. App'x ---, --- 2014 WL 943933, at *1 (2d Cir. Mar. 12, 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65, 2013 WL 3388446, at *4 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent.*

*Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). The Second Circuit has cautioned that '[w]here an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Taddeo v. L.M. Berry & Co.*, 526 F. App'x 121, 122 (2d Cir. 2013) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

### b. Title VII and NYSHRL Discrimination Claims

Plaintiff alleges that Defendant discriminated against him on the basis of race and national origin, in violation of Title VII and NYSHRL. (Compl. ¶¶ 31, 43.) Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Thus, "[a]n employment decision . . . violates Title VII when it is 'based in whole or in part on discrimination.'" *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)). Title VII discrimination claims are assessed using the burden-shifting framework

established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5]

*See e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981); *United States v. City of New York*, 717 F.3d 72, 83–84 (2d Cir. 2013) (discussing application of *McDonnell Douglas* framework to race discrimination claim); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (national origin claims are subject to burden shifting).  Under the framework, a plaintiff must first establish a *prima facie* case of discrimination.  *Hicks*, 509 U.S. at 506; *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013); *Ruiz*, 609 F.3d at 491.  The plaintiff's burden at this stage is "minimal."  *Holcomb*, 521 F.3d at 139 (quoting *Hicks*, 509 U.S. at 506).  If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *Hicks*, 509 U.S. at 506–07; *Ruiz*, 609 F.3d at 492.  The defendant's burden "is not a particularly steep hurdle."  *Hyek v. Field Support Servs.*, 702 F. Supp. 84, 93 (E.D.N.Y. 2010).  It "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Hicks*, 509 U.S. at 509).  "If the employer is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination."  *City of New York*, 717 F.3d at 102.  To defeat summary judgment at this stage, "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus."  *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir.

---

[5]  The burden of proof and production for employment discrimination claims under Title VII and the NYSHRL are identical.  *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) ("Claims brought under the NYSHRL 'are analyzed identically' and 'the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII.'" (alteration in original) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999))).  Therefore, Plaintiff's Title VII and NYSHRL discrimination claims are analyzed together for purposes of this motion.

2010); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S. Ct. 2517, 2522–23 (2013) ("An employee who alleges status-based discrimination under Title VII . . . [must] show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.").

### i. Plaintiff's *Prima facie* Case

In order to establish a *prima facie* case of racial or national origin discrimination, Plaintiff must show that: "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Mills v. S. Connecticut State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013); *Ruiz*, 609 F.3d at 491–92.

Defendant does not dispute that Plaintiff satisfies the first three elements of a *prima facie* case. Plaintiff is African-American and from Haiti, ((Def. Mem. 9), and therefore is a member of two protected classes, race and national origin.[6] *See Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *5 (E.D.N.Y. July 30, 2013) ("Plaintiff is African-American and is from Trinidad and Tobago, thus he is a member of two protected classes, race and national origin"); *Smith v. City of New York*, No. 12-CV-3250, 2013 WL 1903856, at *3 (S.D.N.Y. May 8, 2013) (plaintiff adequately pled "membership in a protected class based on national origin" as a "West Indian" of Jamaican descent); *Augustin v. Enlarged City Sch. Dist. of Newburgh*, 616 F. Supp. 2d 422, 439 (S.D.N.Y. 2009) ("There is no dispute that plaintiff, who is Haitian, belongs to a protected class."). Defendant concedes that Plaintiff was qualified for his job, (Def. Mem. 9–10), satisfying the second element, *see Whethers v. Nassau Health Care*

---

[6] At oral argument, counsel for Plaintiff withdrew the national origin discrimination claim. (Oral Arg. Tr. 3:15–23.)

*Corp.*, 956 F. Supp. 2d 364, 375 (E.D.N.Y. 2013); *Moore*, 2013 WL 3968748, at *5. Plaintiff

was terminated, (56.1 ¶ 61), and therefore suffered an adverse employment action, *Gladwin v.*

*Pozzi*, 403 F. App'x 603, 606 (2d Cir. 2010) ("[G]iven that she was fired, Gladwin suffered an

adverse employment action."). Defendant argues that Plaintiff cannot establish a *prima facie*

case because Plaintiff cannot show that his termination occurred under circumstances giving rise

to an inference of discriminatory intent.

### 1. Inference of Discrimination

Plaintiff argues that the August 30, 2010 incident with Davis "led to his termination," and

that the circumstances giving rise to an inference of discrimination include statements made by

Davis to Plaintiff earlier in the year. (Pl. Opp'n 7.) Plaintiff also argues that he was paid less

than similarly situated employees who were not members of his class and that he was denied

training, giving rise to an inference of race and national origin discrimination. (Compl. ¶ 24; Pl.

Opp'n 7; Joseph Aff. ¶¶ 10–11.)

Inference of discrimination "is a 'flexible [standard] that can be satisfied differently in

differing factual scenarios.' " *Howard v. MTA Metro-N. Commuter R.R.,* 866 F. Supp. 2d 196

(S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996));

*see also Moore*, 2013 WL 3968748, at *6 (same). "No one particular type of proof is required to

show that Plaintiff's termination occurred under circumstances giving rise to an inference of

discrimination." *Moore*, 2013 WL 3968748, at *6 (citations omitted). An inference of

discrimination can be drawn from circumstances such as "the employer's criticism of the

plaintiff's performance in ethnically degrading terms; or its invidious comments about others in

the employee's protected group; or the more favorable treatment of employees not in the

protected group; or the sequence of events leading to the plaintiff's [adverse employment

action]." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting

*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)); *see also Abdul-Hakeem*

*v. Parkinson*, 523 F. App'x 19, 20 (2d Cir. 2013) (finding that an inference of discrimination can

be raised by "showing that an employer treated [an employee] less favorably than a similarly

situated employee outside his protected group." (quoting *Ruiz*, 609 F.3d at 493)); *Russell v. Cnty.*

*of Nassau*, 696 F. Supp. 2d 213, 232 (E.D.N.Y. 2010) ("a discriminatory race and/or color

motive can be inferred if a plaintiff was treated differently than similarly situated white

employees or if the defendants engaged in a pattern of discriminatory treatment of African-

American employees" (citing *Abdu-Brisson*, 239 F.3d at 468 and *Johnson v. Cnty. Of Nassau*,

480 F. Supp. 2d 581, 597 (E.D.N.Y. 2007))).

However, a plaintiff's "mere subjective belief that he was discriminated against because

of his race does not sustain a race discrimination claim." *Moore*, 2013 WL 3968748, at *6

(quoting *Gue v. Suleiman*, No. 10-CV-8958, 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27,

2012)); *see also Karim-Seidou v. Hosp. of St. Raphael*, No. 09-CV-51, 2012 WL 6628886, at *5

(D. Conn. Dec. 19, 2012) (the plaintiff's "own subjective beliefs" that he was discriminated

against based on national origin and race were insufficient to survive summary judgment).

"Hostility or unfairness in the workplace that is not the result of discrimination against a

protected characteristic is simply not actionable." *Nakis v. Potter*, No. 01-CV-10047, 2004 WL

2903718, at *20 (S.D.N.Y. Dec. 15, 2004); *see also Gue*, 2012 WL 4473283, at *8 (same).

To establish an inference of discrimination Plaintiff relies on (1) the alleged racial bias of

his colleague, Davis, towards Plaintiff and (2) his allegations that he was paid less than similarly

situated white employees, and was not trained where they were provided with training.

## A. Davis's alleged racial bias

Plaintiff argues that Davis made racially-motivated comments to Plaintiff.[7]  According to Plaintiff, at the time he was promoted to Senior Analyst, Davis stated that he "did not believe [Plaintiff] was qualified for the promotion plaintiff had received to Senior Analyst."[8]  (Joseph Aff. ¶ 9.)  In January 2010, Davis told Plaintiff that "culture, background, and color play an important role in succeeding, or similar words to that effect." (*Id*.; Pl. Opp'n 7.)  Following a major earthquake in Haiti that same month, Davis, after inquiring about Plaintiff's family in Haiti, told Plaintiff "you have accomplished a lot from where you come from."  (Pl. Dep. 176:3–14; 130:15–132:19.)  Defendant disputes that Davis made all the statements described by Plaintiff,[9] but argues that even if Davis did make the statements, they do not demonstrate that Davis is a racist and, in any event, because Davis "did not supervise Plaintiff and had nothing to do with the decision to terminate his employment," any racially-motivated actions by Davis do not give rise to an inference of discrimination with respect to Plaintiff's termination.  (Def. Mem. 11, Reply 1–2.)

Assuming that Davis made these comments to Plaintiff and assuming that they could be construed as racially biased or racially insensitive, these comments by a colleague are not sufficient to establish an inference of discrimination with respect to Plaintiff's termination. Although Defendant overstates the requisite showing for creating an inference of discrimination

---

[7]  The Court notes that Defendant did not object to the use of these statements by Plaintiff.

[8]  During an internal investigation of Plaintiff's race discrimination complaint, Plaintiff told Hamilton that Davis had said to Plaintiff "Who actually selected you for this assignment?" in a manner that implied that Plaintiff was not qualified for the position.  (Hamilton October Investigation at ECF 316.)

[9]  Defendant states that Davis denied making the first two statements. (Def. Reply. 1.)

as one requiring overt racism, Defendant is correct that, absent any evidence that Davis was involved in the decision to terminate Plaintiff, any racial bias or insensitivity on the part of Davis cannot be attributed to the actions of the decision-maker who terminated Plaintiff. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 222 (2d Cir. 2004) (evidence that plaintiff's colleague made racially derogatory remarks were insufficient to raise an inference of discrimination, where there was no evidence that the colleague played a role in the decision to terminate plaintiff, and where there was no evidence of bias on the part of those who did decide to terminate plaintiff); *Risco v. McHugh*, 868 F. Supp. 2d 75, 105 (S.D.N.Y. 2012) (plaintiff could not establish a *prima facie* case of discrimination where there was "no evidence in the record to support an inference of racial animus on the part of . . . the ultimate decision-maker"). Plaintiff has not alleged that any of the decision makers who terminated him harbored any racial or national origin bias. Nor has Plaintiff presented any evidence that Davis had "considerable influence" over the decision makers who terminated his employment. *See Finkelshteyn v. Staten Island University Hospital*, 687 F. Supp. 2d 66, 81 (E.D.N.Y. 2009) (finding that conclusory allegation that "because of their friendship, [a co-worker's] animus must be [the decision maker's] animus" was insufficient to defeat summary judgment, although the co-worker's racially motivated comments, "if proven to be in temporal proximity to the suspension decision, might come closer to raising a triable inference that [the co-worker's] discriminatory influence lead to [the plaintiff's] suspension"); *see also Howe v. Town of Hempstead*, No. 04-CV-0656, 2006 WL 3095819, at * 7 (E.D.N.Y. Oct. 30, 2006) ("Racist comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action. This connection exists if the comments were made by the decision-maker or by someone who had great influence over the decision-maker." (citations omitted)).

Here, assuming that Davis made the statements and engaged in the actions alleged by Plaintiff, and assuming that these statements and actions can be described as racially discriminatory with respect to Plaintiff, because there is no evidence that Davis was a supervisor, (*see* Oral Arg. Tr. 7:16–23), or that he was involved in the decision to terminate Plaintiff, or as a co-worker exerted "considerable" or "great" influence over those who did make the termination decision, these comments and actions by Davis do not allow the Court to draw the requisite inference of discrimination.

## B. Disparate Training and Pay

Plaintiff argues that he "was paid less than similarly situated White employees and was denied training," asserting that he was "paid a lower salary than two similarly situated Senior Analysts who are both white." (Pl. Opp'n 7; Joseph Aff. ¶ 10–11.) While it is unclear if Plaintiff makes this allegation as a freestanding discrimination claim, or to show that he was terminated under circumstances raising an inference of discrimination, in either case the claim fails. To raise an inference of discrimination by relying on differential treatment of similarly-situated individuals, "[t]he 'standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Abdul-Hakeem*, 523 F. App'x at 21 (quoting *Ruiz*, 609 F.3d at 494); *see also Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) ("Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination 'by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that [ ]he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.'" (alteration in original) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997))). The two

positions need not be identical but they must be "sufficiently similar" to support at least a "minimal inference that the difference in treatment may be attributable to discrimination." *Cutler v. Stop & Shop Supermarket Co., L.L.C.*, 513 F. App'x 81, 83 (2d Cir. 2013) (quoting *McGuiness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)); *see also DeFina v. Meenan Oil Co., Inc.*, No. 10-CV-5068, 2013 WL 596622, at *10 (E.D.N.Y. Feb. 15, 2013) ("The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects." (citing *McGuiness*, 263 F.3d at 54)). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Abdul-Hakeem*, 523 F. App'x at 21 (quoting *Ruiz*, 609 F.3d at 493–94) (internal quotation marks omitted).

Similarly, "to establish a *prima facie* case of discriminatory disparate pay under Title VII, a plaintiff must show: (1) that he was a member of a protected class; (2) that he was paid less than similarly situated non-members of his protected class; and (3) evidence of discriminatory animus." *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (citing *Belfi v. Prendergast,* 191 F.3d 129, 140 (2d Cir. 1999), *aff'd*, 75 F. Appx 846 (2d Cir. 2003). Here, Plaintiff has not submitted *any* evidence, such as pay stubs or the testimony of those with personal knowledge of his co-workers' training experiences or pay, in support of his claim that he was trained or paid less than the other two senior analysts he names. Plaintiff's assertion about the pay disparity also does not appear in his deposition testimony. The only evidence offered by Plaintiff is the conclusory statements in his affidavit, where Plaintiff fails to identify whether or how he has personal knowledge of the pay and training provided to the two other Senior Analysts. (Joseph Aff. ¶¶ 10–11.) "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (citing Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 602); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

In addition to offering no admissible evidence that he was paid or trained less well than two white Senior Analysts, Plaintiff offers no factual support for his claim that he was "similarly situated" to the two employees he identifies as comparators. "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Abdul-Hakeem*, 523 F. App'x at 21. Plaintiff asserts only that the two comparators shared the same job title as him, but offers no additional evidence that they were similarly situated in terms of performance, evaluation or discipline standards, or that they engaged in comparable conduct. *See Abdul-Hakeem*, 523 F. App'x at 21 (affirming district court grant of summary judgment on disparate pay claim where plaintiff "provided no factual support that a single alleged comparator performed similar job functions, was subjected to the same disciplinary standards, engaged in similar conduct, or was treated more favorably than her." (alteration, citation and internal quotation marks omitted)).

## ii.    Nondiscriminatory Explanation

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to "rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action." *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 42 (2d Cir. 2012).

Even if Plaintiff could establish a *prima facie* case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff — the

request of a customer after "continuing inappropriate behavior." (Def. Mem. 12.) Defendant argues that Owens & Minor is "engaged in a business that requires the highest level of customer service and satisfaction," that New York Methodist represented an important customer account, and that Manashir's dissatisfaction with Plaintiff was ample, nondiscriminatory justification for Defendant's decision to terminate Plaintiff. (Def. Mem. 12–13; Reply 2–4.). Customer complaints have been recognized as a legitimate and nondiscriminatory reason to terminate an employee. *See Ifill v. United Parcel Serv.*, No. 04-CV-5963, 2008 WL 2796599, at * 7 (S.D.N.Y. July 17, 2008) (finding that defendants' proffer of numerous customer complaints lodged against plaintiff satisfied defendants' burden at this stage); *Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 341 (S.D.N.Y. 2006) (finding that plaintiff's poor customer service record, including numerous customer complaints, was a valid non-discriminatory reason proffered by defendant); *Drummond*, 400 F. Supp. 2d at 531 (finding that the employer's decision to suspend plaintiff "at the request of Simon, one of [defendant]'s clients, after a Simon employee complained about Plaintiff's alleged sexually inappropriate behavior" satisfied defendant's burden to proffer a nondiscriminatory reason for the suspension). Defendant has met its initial burden to demonstrate a nondiscriminatory reason for its decision to terminate Plaintiff's employment.

### iii. Pretext

Once a defendant has proferred a nondiscriminatory reason for its adverse action, the burden shifts back to the plaintiff to show that this reason is pretextual. *Holcomb*, 521 F.3d at 141 (2d Cir. 2008). To avoid summary judgment, the plaintiff must offer evidence from which a reasonable jury could conclude by a preponderance of the evidence that racial or national origin discrimination played a role in the adverse action taken by the defendant. *Id.*; *Weber v. City of*

*New York*, --- F. Supp. 2d ---, ---, 2013 WL 5416868, at *18 (E.D.N.Y. Sept. 29, 2013). A "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Holcomb*, 521 F.3d at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also Nassar*, 570 U.S. at ---, 133 S. Ct. at 2526; *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013). At this stage of the burden-shifting analysis, "[c]onclusory and speculative allegations will not suffice to demonstrate discriminatory intent." *Henny v. New York State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012).

Plaintiff argues that the fact that it was Manashir and not Plaintiff who was argumentative during their September 22, 2013 altercation, and that testimony from managers at Owens & Minor that Manashir was "overbearing, controlling and very protective of 'his turf'" indicated that the reason proffered by Defendant for terminating Plaintiff was pretextual. (Pl. Mem. 8.) Even if Manashir was primarily at fault for the September 22, 2013 incident, this fact does not necessarily require the conclusion that Defendant's reason for terminating Plaintiff was pretext for discrimination. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (finding that plaintiffs must do more than "cite to their mistreatment and ask the court to conclude that it must have been related to their race"); *Jaiyeola v. Carrier Corp.*, 350 F. App'x 583, 585 (2d Cir. 2009) (finding that plaintiff's "claim that his supervisor, rather than he, was to blame for failings in his assigned projects gives rise to no inference of discrimination" (citing *Lizardo*, 270 F.3d at 104)); *Johnson v. MacDonald*, 897 F. Supp. 2d 51, 75 (E.D.N.Y. 2012) (finding that plaintiff failed to show that defendant's proffer of numerous customer complaints against plaintiff was a pretextual reason to terminate plaintiff, where plaintiff "explain[ed] why the customer allegations

were without merit, [but] Plaintiff [did] not deny that these allegations were made"), *aff'd sub nom. Johnson v. Just Energy*, --- F. App'x ---, 2013 WL 6570641 (2d Cir. Dec. 16, 2013); *Risco*, 868 F. Supp. 2d at 102 ("While plaintiff argues that her behavior during the incidents cited by defendants was appropriate and justified, a plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact." (quoting *Fleming v. MaxMara USA,* 644 F. Supp. 2d 247, 266 (E.D.N.Y. 2009), *aff'd*, 371 F. App'x 115 (2d Cir. 2010))). Plaintiff does not challenge the evidence that Manashir complained about having to work with Plaintiff.

Nor does Plaintiff allege or present any evidence that Manashir's reasons for complaining about him were racially-motivated. When a customer's reason for complaining about an employee is itself racially-motivated, an employer cannot rely on such complaints as being "nondiscriminatory" reasons for their adverse actions. *See Ames v. Cartier, Inc.*, 193 F. Supp. 2d 762, 769 (S.D.N.Y. 2002) ("While pandering to customers' discriminatory preferences could very well help effectuate a sale, employers nevertheless 'may not discriminate on the basis of their customers' preferences.'" (citing *Wigginess Inc. v. Fruchtman*, 482 F. Supp. 681, 692 (S.D.N.Y. 1979), *aff'd*, 628 F.2d 1346 (2d Cir. 1980))); *Feder v. Bristol-Myers Squibb Co.*, 33 F. Supp. 2d 319, 333 (S.D.N.Y. 1999) (finding that employer "cannot justify otherwise unlawful discrimination on the ground that one's customers do not like to deal with members of a protected class"); *cf. Harrow v. St. Luke's Cornwall Hosp.*, 485 F. App'x 488, 490 (2d Cir. 2012) ("Even assuming that the patient's husband made a racist statement about [plaintiff] . . . there is nothing in the record to suggest that the Hospital fired her to accommodate the husband's purported racism." (citing *Wigginess Inc.*, 482 F. Supp. at 692)). Plaintiff therefore has no support for his claim that Defendant's decision to terminate him because of a complaint from a

client was motivated by discriminatory animus.  *See*, *e.g.*, *Pascal v. Storage Tech. Corp.*, 152 F. Supp. 2d 191, 212 (D. Conn. 2001) (finding no evidence that customer complaints about the plaintiff were pretext for age discrimination where plaintiff did not suggest "that the client's complaint was age-related").

Plaintiff also argues that the decision by Defendant to terminate his employment, rather than to reassign him to another position, "stretches credibility . . . particularly since defendant[] did not have a problem with his work performance," and demonstrates that the decision was motivated by racial animus.  (Pl. Opp'n 8.)  Defendant argues that its decision to terminate Plaintiff instead of reassigning him was also based on other circumstances where Plaintiff did not communicate well with customers, which resulted in Defendant's reluctance to place him in a "customer-facing" position.  (Def. Reply 4.)  Defendant also refers to a comment in Plaintiff's 2009 evaluation in which White stated "I would recommend an OMU course on conflict management to help [Plaintiff] communicate in difficult situation[s]."  (*Id*. at 3–4 n.1 (citing Pl. Ex. B).)

Plaintiff's argument that Defendant "did not have a problem with his work performance" overlooks the fact that Defendant had previously documented the suggestion that Plaintiff's conflict management and communication skills be improved.  (*See* Pl. Ex. B.)  However, accepting Plaintiff's allegations that Defendant had no prior complaints about Plaintiff's performance, this lack of complaint, in and of itself, is insufficient to show pretext.  *See E.E.O.C. v. Bloomberg L.P.*, No. 07-CV-8383, 2013 WL 4799161, at * 28 (S.D.N.Y. Sept. 9, 2013) (finding that "a claimant cannot merely point to prior favorable evaluations to satisfy her burden at the pretext stage" (citing *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717–18 (2d Cir. 1994))).

In sum, Plaintiff has failed to establish a *prima facie* case of discrimination. However, even assuming that he could, Defendant has articulated a nondiscriminatory reason for its decision to terminate Plaintiff, and Plaintiff has not presented any evidence to demonstrate that this reason was pretext for discrimination. Plaintiff has not shown that racial discrimination was at least a motivating factor underlying Defendant's decision. Plaintiff's Title VII and NYSHRL discrimination claims are therefore dismissed. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 99 (2d Cir. 2001) (affirming summary judgment for defendant where "[p]laintiffs failed to produce any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by [defendant], let alone evidence that could reasonably support a verdict in their favor").

### c. Title VII and NYSHRL Retaliation Claims

Claims of retaliation for engaging in protected conduct under Title VII and NYSHRL are examined under the *McDonnell Douglas* burden shifting test.[10] *Summa v. Hofstra Univ.*, 708 F.3d 111, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas* . . . governs retaliation claims under . . . Title VII" (citing *McDonnell Douglas*, 411 U.S. at 802)). Under the test, "[f]irst, the plaintiff must establish a *prima facie* case of retaliation. If the plaintiff succeeds, then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Fincher*, 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 n.6 (2d Cir. 2011) (discussing the burden shifting

---

[10] Claims of retaliation for complaints about employment discrimination under the NYSHRL are analyzed under the same *McDonnell Douglas* framework applied to Title VII claims of employment discrimination. *See Summa v. Hofstra Univ.*, 708 F.3d 111, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas* . . . governs retaliation claims under both Title VII and the NYSHRL." (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006))).

analysis in retaliation context); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (same). If the employer succeeds at the second stage, the presumption of retaliation dissipates, and the plaintiff must show that, *but for* the protected activity, she would not have been terminated.[11] *See Nassar*, 570 U.S. at ---, 133 S. Ct. at 2534 (emphasis added) (holding that

---

[11] It is unclear whether the Supreme Court decision in *Nassar*, which changed the standard for establishing causation in a retaliation claim from showing that retaliation was a "motivating factor," to showing that it is a "but-for" cause of the adverse employment action, applies to retaliation claims brought pursuant to the NYSHRL. New York State courts have yet to directly address the impact of the Supreme Court's recent holding in *Nassar* on the NYSHRL, nor has the Second Circuit had the opportunity to address this issue. *See Giudice v. Red Robin Int'l, Inc.*, --- F. App'x ---, ---, 2014 WL 552668, at *2 (2d Cir. Feb. 13, 2014) (declining to address "any differences between the standard stated in *Summa* [holding that retaliation claims under Title VII and NYSHRL are analyzed in an identical manner] and the Supreme Court's articulation of the 'but-for' standard in *Nassar*); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 n.7 (2d Cir. 2013) ("Because the plaintiff's claims survive under the *Nassar* 'but-for' standard, we do not decide whether the NYSHRL claim is affected by *Nassar,* which by its terms dealt only with retaliation in violation of Title VII."). In deciding a retaliation claim under the NYSHRL after *Nassar*, the First Department did not specifically decide the issue but noted that the plaintiff "will be unable to prove that the challenged failure to reassign occurred, *in whole or in part*, because of retaliation." *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 981 N.Y.S.2d 89, 93 (App. Div. 2014) (emphasis added)).

Traditionally, "[t]he standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000)); *Vandewater v. Canandaigua Nat. Bank*, 893 N.Y.S.2d 916 (2010) ("It is well settled that the federal standards under [T]itle VII of the Civil Rights Act of 1964 are applied to determine whether recovery is warranted under the Human Rights Law." (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 330 (2004))). The relevant provisions of Title VII and NYSHRL are textually similar, and both prohibit an employer from discriminating or retaliating against an individual "because" he or she engaged in protected activity. In *Nassar*, the Supreme Court held that under "the default rules" of statutory construction, "causation" should be interpreted as "but-for causation" "absent an indication to the contrary in the statute itself," and interpreted Title VII's use of "because" as requiring "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S. Ct. 2517, 2528 (2013). Since the NYSHRL statutory language is the same, and the New York Court of Appeals has consistently stated that federal Title VII standards are applied in interpreting the NYSHRL, this Court will continue to interpret the standard for retaliation under the NYSHRL in a manner consistent with Title VII jurisprudence, as clarified by the Supreme Court in *Nassar*. *See, e.g.*, *Russo v. New York Presbyterian Hosp.*, --- F. Supp. 2d ---, ---, 2013 WL 5346427, at * 18 (E.D.N.Y. Sept. 23, 2013) (discussing post-*Nassar* retaliation standard under NYSHRL); *Leacock v. Nassau Health Care Corp.*, No.

a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); *see also Russo v. New York Presbyterian Hosp.*, --- F. Supp. 2d ---, ---, 2013 WL 5346427, at *18 (E.D.N.Y. Sept. 23, 2013) (same); *Ellis v. Century 21 Dep't Stores*, --- F. Supp. 2d ---, ---, 2013 WL 5460651, at *27 (E.D.N.Y. Sept. 28, 2013) (same); *Moore*, 2013 WL 3968748, at *14 (same).

### i. *Prima facie* Case

In order to establish a *prima facie* case of retaliation, a plaintiff must establish "(1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)); *see also Summa*, 708 F.3d at 125; *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006). The burden at the summary judgment stage for Plaintiff is "'minimal' and '*de minimis*,'" and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Kwan*, 737 F.3d at 844 (quoting *Jute*, 420 F.3d at 173). Defendant does not dispute that Plaintiff's termination was an

---

08-CV-2401, 2013 WL 4899723, at *9 n.4 (E.D.N.Y. Sept. 11, 2013) (continuing to construe the NYSHRL retaliation standard as requiring the same elements as Title VII after *Nassar* (citing *Dall v. St. Catherine of Siena Med. Ctr.*, --- F. Supp. 2d ---, ---, 2013 WL 4432354, at * 19 n.12 (E.D.N.Y. Aug. 14, 2013))); *Dall*, --- F. Supp. 2d at ---, 2013 WL 4432354, at * 19 n.12 (interpreting the plaintiff's NYSHRL retaliation claim consistently with his Title VII retaliation claim after *Nassar*); *Brown v. City of New York*, No. 11-CV-2915, 2013 WL 3789091, at *19 (S.D.N.Y. July 19, 2013) (reviewing the but-for causation requirement for Title VII retaliation articulated in *Nassar* and stating that the plaintiff's "retaliation claim under the NYSHRL is 'analytically identical to [her] claims brought under Title VII'" (citation omitted)).

adverse employment action but disputes that Plaintiff engaged in protected activity or that there was a causal connection between that activity and his termination. (Def. Mem. 14.)

### 1. Protected Activity

Plaintiff argues that he raised concerns to two different managers — Leonhardt and Kernaghan — that his treatment by Davis on August 30, 2010 was racially-motivated, thereby satisfying this element. (Pl. Opp'n 9–10 (Hamilton October Investigation)). Plaintiff states that he informed Hamilton on or about September 22, 2010 that he believed that Davis discriminated against him on the basis of race. (Pl. Opp'n 9; Pl. Aff. ¶ 21.) In addition, the parties dispute whether Plaintiff shared this belief with White during his conversation with White on September 1, 2010.

"To be protected activity, 'the plaintiff need not establish that the conduct [h]e opposed was actually a violation of Title VII.'" *Summa*, 708 F.3d at 126 (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). "The law protects employees [who] . . . make[ ] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Id.* (alteration in original) (quoting *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001)). The evidence from Defendant's records show that on unspecified days, Plaintiff informed Leonhardt and Kernaghan that "he didn't know why this was happening to him and perhaps it was related to his race," and "questioned whether the attitude he received was because of race." (Hamilton October Investigation at ECF 315.) In addition, Defendant's records show that on September 8, 2010, Plaintiff told Hamilton that he felt that Davis needed "cultural sensitivity" training, (*see* Hamilton Decl. Ex. D at 3), which

could be construed as a form of complaint about discrimination.[12]  Although the notes of the

human resources employee conducting these interviews indicates that Leonhardt stated that

Plaintiff "didn't make any specific allegation but was kind of wondering out loud," and

Kernaghan "said that [Plaintiff] never claimed racism explicitly," the statements that Plaintiff

made to these two managers, combined with the fact that the parties dispute whether Plaintiff

also told White on September 1, 2010 that he was complaining about discrimination, are

sufficient to establish this element of Plaintiff's *prima facie* case.  *See Amin v. Akzo Nobel*

*Chemicals, Inc.*, 282 F. App'x 958, 961 (2d Cir. 2008) ("Informal complaints to management as

to discrimination on a basis prohibited by Title VII are protected activity." (citing *Cruz v. Coach*

*Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000))).  "In addition, such complaints are protected

activity even when the underlying conduct complained of *was not in fact unlawful* so long as the

plaintiff can establish that he possessed a good faith, reasonable belief that the underlying

challenged actions of the employer violated [the] law."  *Id*. (quoting *Treglia v. Town of Manlius*,

313 F.3d 713, 719 (2d Cir. 2002) (alteration and internal quotation marks omitted)).

## 2.  Defendant's Knowledge

The parties have not addressed the second element of a *prima facie* case which requires

evidence of the employer's knowledge of Plaintiff's protected activity.   It is not necessary that

---

[12]  Plaintiff's comment that Davis needed "cultural sensitivity" training can be seen as an
informal means of complaining about racial discrimination in the workplace.  In light of the fact
that corporate human resources departments implement cultural sensitivity trainings to prevent or
address complaints of discrimination, the Court will construe Plaintiff's comment as a complaint
about discrimination.  *See, e.g.*, *Bourdeau v. Hous. Works, Inc.*,  No. 99-CV-11915, 2001 WL
943316, at *2 (S.D.N.Y. Apr. 20, 2001) (describing defendant's actions in requiring individual
supervisor to undergo cultural sensitivity training in response to a complaint of racial
discrimination); *Jamison v. Chapman*, No. 08-CV-856, 2009 WL 3762348, at *2 (N.D.N.Y.
Nov. 9, 2009) (same).

Plaintiff prove that the specific actors knew of the protected activity as long as Plaintiff can demonstrate general corporate knowledge. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice. 'Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" (citations omitted)); *Henry*, 616 F.3d at 147–48 ("to satisfy the knowledge requirement, [nothing] more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity" (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000))); *Trivedi v. N.Y. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 736 (S.D.N.Y. 2011) ("A plaintiff need not prove that the specific actors within an organization were aware that the plaintiff made allegations of retaliation to make out a *prima facie* retaliation claim; rather, 'general corporate knowledge that the plaintiff has engaged in a protected activity' is sufficient." (citations omitted)).

The record shows that at least two managers, Kernaghan and Leonhardt, were aware that Plaintiff felt that Davis's actions were racially motivated, while the parties dispute whether Plaintiff's direct supervisor knew about the complaint. Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Plaintiff has therefore established the Defendant's knowledge of his protected activity.

### 3. Causal connection

Plaintiff argues that based on the fact that his employment was terminated one month after his first complaint about racism to management, he has satisfied this element. Defendant argues that Plaintiff cannot establish a causal connection between his alleged protected activity and his termination, because temporal proximity alone is insufficient to prove a causal

connection, and Manashir's request for Plaintiff's removal was an intervening causal event precipitating Plaintiff's termination. (Def Mem. 16–17.) "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski*, 596 F.3d at 110 (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). Although temporal proximity alone is insufficient to carry a plaintiff's *ultimate* burden to prove his case of retaliation, the "but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment or at trial indirectly through temporal proximity." *Kwan*, 737 F.3d at 845; *see also Kim v. Columbia Univ.,* 460 F. App'x. 23, 25 (2d Cir. 2012) ("[T]emporal proximity between protected activity and adverse action may be sufficient to satisfy the causality element of a *prima facie* retaliation claim . . . ."); *Feingold*, 366 F.3d at 156 ("[T]he requirement that [plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two."); *Dall v. St. Catherine of Siena Med. Ctr.*, ---F. Supp. 2d ---, ---, 2013 WL 4432354, at *22 (E.D.N.Y. Aug. 14, 2013) ("[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (quoting *Gorzynski*, 596 F.3d at 110–11)).

Plaintiff alleges that his first complaint to management was on August 30, 2010, and he was terminated one month later. This is sufficient to meet Plaintiff's "minimal" burden to show a causal connection at the *prima facie* stage. *See Gorzynski*, 596 F.3d at 110 ("Though this Court has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously

held that five months is not too long to find the causal relationship.").

### ii. Non-Retaliatory Explanation

Since Plaintiff has established a *prima facie* case of retaliation, a presumption of retaliation arises and Defendant must articulate a legitimate reason for Plaintiff's termination. *Fincher*, 604 F.3d at 720. As discussed *supra* in part II.b.ii, Defendant has met its burden to show that it had a legitimate, non-retaliatory reason for terminating Plaintiff's employment — customer dissatisfaction with Plaintiff.

### iii. Pretext

Plaintiff relies on temporal proximity and evidence that the complaining customer Manashir, "who was allegedly unable to work with [Plaintiff], has himself been described in unflattering terms," to support his claim that Defendant's proffered explanation is pretext. (Pl. Opp'n 10.) "[D]uring the final stage of the burden shifting framework, the plaintiff must show that retaliation was a but-for cause of the adverse employment action." *Dall*, --- F. Supp. 2d at ---, 2013 WL 4432354, at *22. In order to establish but-for causation, Plaintiff would have to prove that his termination would not have occurred in the absence of a retaliatory motive. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Kwan*, 737 F.3d at 846. "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. However, a plaintiff may rely on evidence comprising [his] *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Id*. at 847 (citations omitted).

Plaintiff's reliance on the fact that Manashir was at fault does not demonstrate the kind of "weaknesses, implausibilities, inconsistencies, or contradictions" that is needed to show "but-

for" causation. Even if the Court assumes that the customer was responsible for their disagreement and that Defendant knew Manashir was responsible, this fact does not establish that Defendant was retaliating against Plaintiff when it terminated Plaintiff over the disagreement with the customer since, regardless of who was responsible for the disagreement, the disagreement itself is a non-retaliatory basis for terminating Plaintiff. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what *motivated* the employer" (citation and internal quotation marks omitted)); *Greene v. Brentwood Union Free Sch. Dist.*, --- F. Supp. 2d ---, ---, 2013 WL 4432357, at * 17 (E.D.N.Y. Aug. 13, 2013) ("Federal courts do not have a 'roving commission to review business judgments,' and may not 'sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions.'" (quoting *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) and *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991))); *Moore*, 2013 WL 3968748, at *12 ("[T]he fact that an employee 'disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.'" (quoting *Grant v. Roche Diagnostics Corp.*, No. 09-CV-1540, 2011 WL 3040913, at *11 (E.D.N.Y. July 20, 2011)); *Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409, 430 (E.D.N.Y. 2012) ("The question in this Title VII case is not whether defendants' decision to terminate plaintiff was correct but whether it was discriminatory."); *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 250 (N.D.N.Y. 2010) (plaintiff's "disagreement with the conclusions reached are insufficient to establish pretext").

Although "the determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts," *Kwan*, 737 F.3d at 846 n.5, here there are no disputed facts that could reasonably suggest retaliation. Without any additional evidence that Defendant's decision to terminate Plaintiff was related to the complaints that Davis's actions of August 30, 2010 were racially-motivated, Plaintiff cannot show that, but-for those complaints, he would not have been terminated. *See Floyd v. New York City Dep't of Educ.*, No. 10-CV-8951, 2014 WL 171156, at *12 (S.D.N.Y. Jan. 13, 2014) (granting summary judgment for defendant where plaintiff "has not produced any evidence to show that retaliation was the true basis for termination," and defendant's reason for termination, unsatisfactory performance, was "well-documented"); *cf. Kwan*, 737 F.3d at 839 (reversing denial of summary judgment on plaintiff's Title VII retaliation claim, finding that the defendant's shifting explanations for why it fired plaintiff, combined with the temporal proximity of plaintiff's termination to her complaints of gender discrimination, precluded summary judgment). Plaintiff's Title VII and NYSHRL retaliation claims are dismissed.

### d. NYCHRL Discrimination and Retaliation Claims

Plaintiff alleges that Defendant discriminated against him on the basis of race and national origin, and retaliated against him for complaining about discrimination, in violation of the New York City Human Rights Law. (Compl. ¶¶ 51, 63.)

### i. Discrimination

"To state a claim for discrimination [under the NYCHRL], a plaintiff must only show differential treatment of any degree based on a discriminatory motive; then, 'the employer may present evidence of its legitimate, nondiscriminatory motives to show the conduct was not

caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played *no* role in its actions.'" *Wolf v. Time Warner, Inc.*, --- F. App'x ---, ---, 2013 WL 6670685, at * 3 (2d Cir. Dec. 19, 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n. 8 (2d Cir. 2013)). However, New York state courts "recognize that the broader purposes of the City HRL do not connote an intention that the law operate as a 'general civility code.'" *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 40–41 (App. Div. 2009) (quoting *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 81 (1988)); *see also Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 58 (App. Div. 2012) ("*Williams* recognized that the City HRL is not a 'general civility code'"); *Nelson v. HSBC Bank USA*, 929 N.Y.S.2d 259, 264 (App. Div. 2011) ("the broader purposes of the City's law 'do not connote an intention that the law operate as a 'general civility code,'" (quoting *Williams*, 872 N.Y.S. at 40)). New York courts recognize "an affirmative defense whereby defendants can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Williams*, 872 N.Y.S. at 41; *see also Gelin v. City of New York*, No. 10-CV-5592, 2013 WL 2298979, at *12 (E.D.N.Y. May 24, 2013).

Based on the record before the Court, Plaintiff has not established a discrimination claim even under the more liberal NYCHRL standard, because he has failed to show that discrimination played *any* role in Defendant's decision to terminate him. Other than Plaintiff's allegations that a co-worker — who Plaintiff has not shown had any involvement with Plaintiff's termination, or any influence over the decision makers — made racially insensitive comments to him, there is no evidence whatsoever that the individuals who decided to terminate Plaintiff harbored any discriminatory animus. *See Wolf*, --- F. App'x at ---, 2013 WL 6670685 at *2

(affirming denial of summary judgment on NYCHRL age and gender discrimination claim, where plaintiff Wolf presented "little, if any, evidence of . . . animus on the part of . . . [the] supervisors who fired her," those supervisors "made the decision to terminate Wolf's employment after closely observing her performance, attitude, and conduct for at least six months," and there was little, if any, evidence of animus "on the part of other colleagues who reported negative comments about her"); *Fenner v. News Corp.*, No. 09-CV-09832, 2013 WL 6244156, at * 14 (S.D.N.Y. Dec. 2, 2013) (granting summary judgment to defendants on NYCHRL discrimination claim where "[p]laintiffs argue that they were treated worse than their white colleagues in a multitude of ways — lower pay, inferior assignments, dismissive supervisors, less access to resources — but they have not supported their allegations with evidence that white employees were treated better"); *Short v. Deutsche Bank Sec., Inc.*, 913 N.Y.S.2d 64, 67 (App. Div. 2010) (affirming summary judgment for defendant on NYCHRL claims where "it is clear that the disparate treatment alleged was attributable to legitimate business and nondiscriminatory reasons rather than plaintiff's [protected status]").

Because there is no evidence from which a reasonable jury could find that discriminatory animus played any role in the decision to terminate Plaintiff, Plaintiff's discrimination claim under NYCHRL is dismissed.

### ii. Retaliation

The NYCHRL prohibits employers from "retaliat[ing] . . . in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). "[T]o prevail on a retaliation claim under NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in

such action." *Wolf*, --- F. App'x at ---, 2013 WL 6670685, at * 3 (quoting *Mihalik*, 715 F.3d at

112). This statute also expressly requires that "its provisions 'be construed liberally for the

accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether

federal or New York State civil and human rights laws, including those laws with provisions

comparably-worded to provisions of this title[,] have been so construed." *Mihalik*, 715 F.3d at

109 (quoting Restoration Act § 1). Accordingly, the but-for causation standard established in

*Nassar* should not be applied to NYCHRL claims. *See Russo*, --- F. Supp. 2d at ---, 2013 WL

5346427, at *19. A plaintiff must still establish, however, that "there was a causal connection

between his protected activity and the employer's subsequent action, and must show that a

defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by

an impermissible motive.'" *Weber*, --- F. Supp. 2d at ---, 2013 WL 5416868, at *30 (quoting

*Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (App. Div. 2013)); *see also*

*Wilcox v. Cornell Univ.*, --- F. Supp. 2d ---, ---, 2013 WL 6027922, at *4 (S.D.N.Y. Nov. 14,

2013) ("[U]nder all three statutes, Plaintiff must demonstrate some evidence that 'link[s] her

complained-of [treatment] to a retaliatory motivation.'" (quoting *Williams*, 872 N.Y.S.2d at 35)).

        In the absence of evidence beyond Plaintiff's speculation that his supervisor, White,

and/or the human resources department of Owens & Minor were motivated to terminate Plaintiff

in response to Plaintiff's complaints to Leonhardt, Kernaghan, White or Hamilton, Plaintiff

cannot establish retaliation under the less stringent standard of the NYCHRL. *See Pacheco v.*

*Comprehensive Pharmacy Servs.*, No. 12-CV-1606, 2013 WL 6087382, at *14, 16 (S.D.N.Y.

Nov. 19, 2013) (finding plaintiff could not establish that defendant's reason for termination was

pretext and denying her retaliation claim under NYCHRL where she denied that she possessed

poor interpersonal skills, but did not dispute that she had received "multiple staff complaints"

about her interpersonal skills); *Brightman*, 970 N.Y.S.2d at 792 (affirming summary judgment for defendant on NYCHRL retaliation claim where plaintiff "failed to . . . demonstrate any causal nexus between her protected activity and the alleged retaliation"); *cf. Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 181 (S.D.N.Y. 2011) (finding that "the inconsistencies in the various explanations offered by [defendant] for transferring [plaintiff] to Dallas and the evidence that [his supervisors] responded to Williams' allegations by yelling at him, combined with the temporal proximity between his complaints and the transfer order, create[d] a material dispute as to whether [defendant's] actions were merely a pretext for impermissible retaliation" under NYCHRL's more liberal causation standard).  Even assuming that White was aware of Plaintiff's complaints about racial insensitivity, the record shows that Defendant terminated Plaintiff after his verbal disagreement with a client, who then requested to no longer work with Plaintiff. Plaintiff cannot show that this reason was pretextual and that retaliation nevertheless played a role in his termination.  Accordingly, Plaintiff's NYCHRL retaliation claim is dismissed.

## III.  Conclusion

The Court grants Defendant's motion for summary judgment in its entirety.  The Clerk of the Court is directed to close this case.

SO ORDERED:

_____
        s/MKB
MARGO K. BRODIE
United States District Judge

Dated: March 24, 2014
        Brooklyn, New York